IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Regina Robinson, on behalf of herself and all others similarly situated, | ) ) ) ) | Civil Action No. 2:18-cv-02927-DCN-MGB |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COMPLAINT** **(Class Action under Title VII for Disparate Impact)** |
| Carolina First Bank, N.A., | ) ) | |
| Defendant. | ) ) | |

Plaintiff Regina Robinson ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, brings the following allegations against Carolina First Bank, N.A., ("Defendant" or "the Bank"):

## SUMMARY OF THE CLAIMS

1. This case is about Defendant's use of credit history to deny employment opportunities to otherwise qualified job applicants resulting in discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*.

2. Defendant eventually discontinued its use of the challenged policy in April 2011.

3. The Bank's prior policy of screening and rejecting applicants based on their credit history ("Screening Process") was unlawful under Title VII because it had a significant adverse impact upon African Americans and because it was neither job-related nor consistent with business necessity.

## BACKGROUND

4. Studies show that credit screens have no relationship to on-the-job performance.

5. An employer that nonetheless uses a credit screen to reject applicants is more likely to reject African American applicants than White applicants.[1]

6. This is because African Americans are more likely than Whites to have lower credit scores or negative credit histories. For example, a 2012 study by the Federal Trade Commission ("FTC") found that 11.4% of White individuals surveyed had FICO scores lower than 590 compared to 54% of African American individuals surveyed.[2]

7. Several systemic issues contribute to the increased likelihood that African Americans will have lower overall credit scores and more debt issues than White individuals. These include racial disparities in earnings and wealth, historic predatory lending schemes and higher interest rates on credit cards.[3] As a result, African Americans are more vulnerable than Whites to, for example, foreclosures and loan defaults.

8. Further, credit reports frequently do not provide reliable or accurate representations of credit histories. For example, the 2012 FTC study found that 26% of participants identified at least one potentially material error in their credit reports.[4]

9. Prior to April 20, 2011, the Bank performed credit checks on its applicants for positions across the Bank's departments, as part of its Screening Process. The Bank's credit report guideline excluded job applicants based on their credit report history for: (1) unpaid

---

[1] Laura Koppes Bryan & Jerry K. Palmer, *Do Job Applicant Credit Histories Predict*
[2] Federal Trade Commission, *Report to Congress under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, tbl. 3 (2012), https://www.ftc.gov/sites/default/files/documents/ reports/section-319-fair-and-accurate-credit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.
[3] *See* Amy Traub, *Discredited: How Employment Credit Checks Keep Qualified Workers Out of a Job*, Demos (2013), http://www.demos.org/discredited-how-employment-credit-checks-keep-qualified-workers-out-job; Shawn Fremstad, *Discrediting Workers: How Credit Reports are Distorting the Job Market, Prolonging Unemployment, and Denying Equal Opportunity to Workers*, Demos, at 3 (2010), http://www.demos.org/publication/discrediting-workers-how-credit-reports-are-distorting-job-market-prolonging-unemploymen.
[4] Federal Trade Commission, *supra* note 2, at i.

2

balances on non-medical collections accounts or balances on liens or judgments appearing in public records; and (2) unpaid balances, charge offs, voluntary or involuntary repossessions, paid or unpaid foreclosures, and accounts in dispute for credit accounts.

10. Based on information the Bank provided to the Equal Employment Opportunity Commission ("EEOC"), Defendant's Screening Process excluded African American applicants from employment at a rate three times that of White applicants. These rates are statistically significant in violation of Title VII.

11. There is no evidence to support the Bank's Screening Process as being job related or consistent with business necessity. The Bank discontinued its Screening Process in April 2011.

## CLASS DEFINITION

12. Plaintiff brings this case as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the following class:

> All African American applicants for employment to Carolina First Bank who were coded by Defendant as having been rejected for adverse credit from April 29, 2010, to April 30, 2011 ("the Class").

## JURISDICTION AND VENUE

13. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4), as this claim arose under the laws of the United States, and under § 717 of Title VII, 42 U.S.C. § 2000e *et seq*.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because part of the events or omissions giving rise to the claims occurred in this district and Defendant conducts business within this district.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

15. On February 22, 2011, Plaintiff filed an individual and class Charge of

Discrimination with the EEOC, based on her denial of employment by Defendant.

16. On or around October 27, 2011, the EEOC dismissed the action on the grounds that: (1) Ms. Robinson was not hired because of her credit report; (2) Ms. Robinson failed to dispute the accuracy of the information in her credit report; (3) the Bank was unaware of Ms. Robinson's race at the time of her application; and (4) the Bank hired an African American into the position Ms. Robinson applied for.

17. On January 9, 2012, Ms. Robinson provided additional legal and factual support for her disparate impact claim to the EEOC, refuting both the relevance of the Bank's intent to discriminate and consequently the grounds for the EEOC's dismissal, for purposes of disparate impact analysis and challenging the Bank's position that its prior credit check policy was job related and consistent with business necessity.

18. On or around January 17, 2012, the EEOC issued a notice of reconsideration and revoked the dismissal. On January 28, 2015, the EEOC issued a cause determination in Ms. Robinson's favor, in which it found that the Bank's credit check practices through April 30, 2011 had excluded a "statistically significant percentage of African American applicants," that the Bank had not maintained or produced evidence of validation studies for its Screening Policy, and that the Bank failed to show that its Screening Policy was job-related and consistent with business necessity. *See* Ex. 1 (EEOC Cause Determination).

19. On or about May 7, 2015, the EEOC issued a Notice of Right to Sue.

20. On July 17, 2015, Plaintiff entered into a tolling agreement with Defendant for the benefit of herself and other potential plaintiffs to toll the statute of limitations on her claim that Defendant's credit check practices had a disparate impact on African American applicants as a class on the basis of race in violation of Title VII claims. *See* Ex. 2 (Tolling Agreement).

21. This action was filed on October 29, 2018, within the required time limits.

22. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

*Plaintiff Regina Robinson*

23. Plaintiff Robinson is an African American female resident of South Carolina.

24. In April 2010, Ms. Robinson applied online for a position as Business Banking Coordinator in the Collections Department of the Bank.

25. Ms. Robinson was qualified for the position based on the job description and her prior experience.

26. Defendant determined that Ms. Robinson possessed the minimum qualifications necessary for the position, then requested a copy of her credit report from Equifax Information Services, LLC, as required under Defendant's Screening Process.

27. On or about April 26, 2010, the Bank wrote to Ms. Robinson and provided her with a copy of her credit report.

28. On or about May 3, 2010, the Bank notified Plaintiff Robinson by letter that she would not be hired because of her credit report.

*Defendant Carolina First Bank*

29. Defendant is a banking establishment that provides personal, small business, and commercial banking products and services in South Carolina and North Carolina.

30. Carolina First Bank was acquired by TD Bank, N.A., in September 2010.

31. At all relevant times, Defendant has been an employer as defined by Title VII of the Civil Rights Act.

32. Defendant, by soliciting, conducting, and transacting business in the state of

South Carolina, engages in continuous, permanent, and substantial activity within the state.

## STATEMENT OF CLAIMS

33. At all times relevant to this Complaint, Defendant utilized a uniform procedure for hiring non-exempt employees in all of its bank locations. From its headquarters, Defendant developed a standardized set of employment procedures that each bank location utilized, including the credit history Screening Process described herein.

34. Defendant's Screening Process screened out individuals who would otherwise be eligible for employment according to any rational and fair system of determining who is qualified for employment.

35. African American applicants were screened out from employment based on their credit histories at three times the rate of White applicants.[5] Defendant's Screening Process therefore had a significant and detrimental impact on African American applicants, based on their race, as compared to White applicants.

36. Any selection device that has a disparate impact must have a "manifest relationship to the employment in question." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1970). It must "be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977). As the EEOC has advised, "an employer must not have a financial requirement if it does not help the employer to accurately identify responsible and reliable employees, and if, at the same time, the requirement significantly disadvantages people of a particular race, color, national origin, religion, or sex."[6]

37. Defendant cannot show business necessity with respect to its broad exclusion in

---

[5] *See* Ex. 1 (EEOC Cause Determination).
[6] U.S. EEOC, *Pre-Employment Inquiries and Financial Information*, https://www.eeoc.gov/laws/practices/financial_information.cfm.

its Screening Process. Defendant's exclusion for certain credit histories bore no relation to the employment in question.

38. The Bank's Screening Process excluded job applicants from employment based on their credit report history for unpaid balances on non-medical collections accounts or balances on liens or judgments appearing in public records, as well as unpaid balances, charge offs, voluntary or involuntary repossessions, paid or unpaid foreclosures, and accounts in dispute for credit accounts.

39. Having a lower credit score or negative credit entries on a report are not accurate proxies for determining whether an applicant would be able to perform employment duties for the Bank. There are no reliable studies or empirical data to suggest that applicants with "poor" credit records are more or less likely to engage in terminable offenses.[7]

40. Defendant's Screening Process was far too over-inclusive to meet the standards of job-relatedness and consistency with business necessity. This is especially true for those applicants whose credit histories had mistakes, were resolved, or were untimely.

41. Defendant did not have any legitimate process for determining whether negative credit report entries were untimely, resolved, or erroneous. Defendant's Screening Process, which included an adverse decision sent to the applicant within days of receipt of the report, provided no real opportunity for applicants to provide proof of inaccuracies or proof of resolution.

## CLASS ACTION ALLEGATIONS

42. Plaintiff is a member of the Class, which includes all African American applicants for employment who were coded by Defendant as having been rejected for adverse credit from

---

[7] *See, e.g.*, Bryan & Palmer, *supra* note 1.

April 29, 2010 through April 30, 2011.

43. The members of the Class are so numerous that joinder is impracticable. The number of Class Members is approximately 360. The number of job applicants harmed by Defendant's violations of the law is significantly greater than feasibly could be addressed through joinder. The precise number is uniquely within Defendant's possession, and Class Members may be notified of the pendency of this action by published and/or mailed notice.

44. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Defendant had a *single*, *uniform* credit check procedure that was used for *all* job applicants. Common questions include, but are not limited to:

(1) Whether Defendant's prior policy and practice to exclude job applicants based on negative credit histories had a discriminatory disparate impact on African American applicants;

(2) Whether Defendant's prior policy and practice to exclude job applicants based on their credit history is job-related and consistent with business necessity;

(3) Whether there was a less discriminatory policy and practice that would have met Defendant's legitimate needs; and

45. Plaintiff's claim is typical of the claims of the Class: (1) Plaintiff applied for a job with Defendant within the relevant time period; (2) Plaintiff was processed through the same application procedure; (3) Plaintiff was subjected to the same screening device and hiring process; (4) Plaintiff was denied the position; and (5) Plaintiff has the same discrimination claim based on disparate impact. All claims are shared by each and every class member.

46. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no conflict with any class member. Plaintiff is committed to the goal of eliminating potential future discriminatory impact on African American applicants.

47. Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

48. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b) due to: (1) the risk of inconsistent or varying adjudications with respect to individual Class Members through the prosecution of separate actions; and/or (2) the predominance of questions of law and/or fact common to Class Members over any questions affecting only individual members, and the superiority of a class action to other methods for fairly and efficiently adjudicating this controversy.

### CLAIM FOR RELIEF
### Disparate Impact Discrimination
### Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq.*
### *(On Behalf of Plaintiff and the Class)*

49. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

50. Plaintiff brings this claim on her own behalf and on behalf of the Class.

51. Plaintiff has timely filed a charge with the EEOC and has thus exhausted her administrative remedies.

52. Defendant's prior policy and practice of using employment screens that exclude applicants with certain credit histories from obtaining employment opportunities has harmed Plaintiff and the Class, and constitutes unlawful discrimination on the basis of race, ethnicity, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

53. Defendant's prior policy and practice of using employment screens that exclude applicants with certain credit histories from obtaining employment opportunities had a disparate impact on African Americans and is neither job related nor consistent with business necessity. Even if Defendant's prior policy and practice of denying employment opportunities based on applicants' credit history records could be justified by business necessity, a less discriminatory

alternative existed that would have equally served any legitimate purpose.

54. Defendant's conduct has caused Plaintiff and the members of the Class substantial losses in earnings and other employment benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief as follows:

1. Certification of the case as a class action on behalf of the proposed Class;

2. Designation of Plaintiff Regina Robinson as representative of Class Members;

3. Designation of Plaintiff's counsel of record as Class Counsel;

4. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

5. An award of back pay accruing as a result of the delay in hiring Plaintiff and Class Members caused by the illegal policies and practices alleged herein;

6. An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) & 2000e-16;

7. Pre-judgment and post-judgment interest, as provided by law; and

8. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Respectfully submitted,

By: _s/ J. Scott Falls_

**FALLS LEGAL LLC**
J. Scott Falls (Federal I.D. No. 10300)
Email: scott@falls-legal.com
Ashley L. Falls (Federal I.D. No. 12083)
Email: ashley@falls-legal.com
245 Seven Farms Drive, Suite 250
Charleston, South Carolina 29492
Telephone: (843) 737-6040
Facsimile: (843) 737-6140

**OUTTEN & GOLDEN LLP**
Ossai Miazad*
Email: om@outtengolden.com
Juno Turner*
Email: jturner@outtengolden.com
Michael C. Danna*
Email: mdanna@outtengolden.com
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: 212-245-1000

***Attorneys for Plaintiff and the Putative Class***

\* *pro hac vice* motion forthcoming

Charleston, South Carolina
October 29, 2018