UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Regina Robinson, *on behalf of herself and all others similarly situated*, | ) ) | CA No. 7:18-cv-02927-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FINAL APPROVAL ORDER** |
| | ) | **OF CLASS ACTION SETTLEMENT** |
| Carolina First Bank NA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court[1] are Plaintiff's unopposed motions for final approval of class action Settlement [Doc. 27], approval of attorneys' fees and costs [Doc. 28], and approval of the Service Award to Plaintiff [Doc. 29]. At the final fairness hearing held on June 18, 2019, the Court granted the pending motions in their entirety and now issues this Opinion and Order explaining its rulings. Accordingly, for the reasons explained below, the Court certifies the Settlement Class; approves the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); approves Class Counsel's request for attorneys' fees in the amount of $150,000 and reimbursement of expenses in the amount of $19,329.76; approves payment of the Service Award to the Class Representative, Regina Robinson, in the amount of $15,000; and dismisses this action with prejudice.

## BACKGROUND

The factual and legal background for this class action are set out in detail in the Court's Preliminary Approval Order [Doc. 19 at 2–3], as well as the parties' Motion for

---

[1]This matter is before the undersigned United States Magistrate Judge pursuant to Local Civil Rule 73.02(B)(1), D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge [Doc. 13]; and the Order of reference by the Honorable Donald C. Coggins, Jr., dated November 14, 2018 [Doc. 15].

Preliminary Approval and supporting attachments [Docs. 8; 8-1; 8-2] and the parties' Motion for Final Approval and supporting attachments [Docs. 27; 27-1; 27-2]. The Court provides only a brief summary of the Class Action Settlement Agreement and the Notice Plan, relevant to the motions now pending before the Court.

## I.    Factual and Procedural History

Regina Robinson ("Plaintiff" or "Class Representative"), brought this class action, on behalf of herself and all others similarly situated, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that Carolina First Bank, N.A. ("Defendant" or "Bank"),  employed a screening policy in its hiring practices that resulted in discrimination on the basis of race.   [Doc. 1.]   The parties reached a settlement regarding Plaintiff's claims, which is set forth in a Joint Stipulation of Settlement and Release [Doc. 8-2 at 9–33] (the "Settlement Agreement").

By Order dated February 14, 2019 ("Preliminary Approval Order"), the Court granted preliminary approval of the class action Settlement, conditionally certified the Settlement Class, appointed Plaintiff as Class Representative, appointed Plaintiff's counsel as Class Counsel, and approved the parties' proposed Notice Plain, including the Claim Form [Doc. 8-2 at 35–39] and Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing [Doc. 8-2 at 41–49] (together the "Notice and Claim Forms").   [Doc. 19.]   The relevant terms of the Settlement Agreement and Court-approved Notice Plan are summarized below.

2

## II.    The Settlement Agreement

Plaintiff and Defendant executed the Settlement Agreement on September 26, 2018.  [Doc. 8-2 at 9–33.]  In summary, the Settlement Agreement provides as follows.

### A.    The Class

For settlement purposes, the Court conditionally approved the following Settlement Class, as contained in the Settlement Agreement:

> All African-American applicants for employment to Carolina First Bank who were coded by Defendant as having been rejected for adverse credit from April 29, 2010, to April 30, 2011.

The parties determined the Class includes 375 Class Members.  [Doc. 27-2 at 42.]

### B.    The Settlement Fund

The Settlement Agreement creates a settlement fund in the amount of $450,000.00 ("Gross Settlement Amount"), which covers (1) payments to Class Members (including Plaintiff) who timely filed valid Claim Forms (the "Claimants"), (2) Court-approved attorneys' fees and costs, (3) Settlement Administrative Costs,[2] and (4) a Court-approved Service Award of $15,000.00 to Plaintiff.  [Doc. 8-2 at 21–23 §§ 3.1(A), 3.1(B), 3.2, 3.3.]  Pursuant to the Settlement Agreement, all Claimants who timely submitted a properly completed

---

[2]Settlement Administrative Costs are defined as all settlement administrative fees, costs, and expenses incurred by the Settlement Claims Administrator.  The Settlement Agreement provides a formula for how the Settlement Administrative Costs will be paid. [Doc. 8-2 at 21 § 3.1(B).]

Claim Form will recover a share of the Net Settlement Fund,[3] pursuant to the following allocation formula:

> (1)    All Claimants who aver on their timely submitted and properly completed Claim Form that they were employed at the time of their application for employment with Defendant will receive a flat payment of at least $100.00 up to a cap of $2,500, distributed on a *pro rata* basis after funds are distributed to the unemployed Claimants set forth in subsection (2).

> (2)    All Claimants who aver on their timely submitted and properly completed Claim Form that they were not employed at the time of their application for employment with Defendant will receive a flat payment of up to $1,000 per month for each month of Claim Form certified unemployment, up to a cap of $25,000.

[*Id.* at 23 § 3.5(B).]

The above allocation formula was determined by the parties to fairly and adequately compensate Class Members based on the status of their employment at the time they applied for a position at the Bank.  [*Id*. at 6 ¶ 20.]  Those applicants that were unemployed at the time of application receive more compensation than applicants who were employed, in order to address the relative hardships of being denied employment with the Bank.  [*Id.*]  In the event the total amount claimed by Claimants exceeds the available funds in the Net Settlement Fund, each Claimant's share of the Net Settlement Fund will be subject to a *pro rata* reduction.  [*Id.* at 23 § 3.5(c).]  Any funds remaining from any unclaimed checks will

---

[3]The "Net Settlement Fund" is defined by the Settlement Agreement as the remainder of the Gross Settlement Amount ($450,000.00) after deductions for Court-approved attorneys' fees (not to exceed one-third of the Gross Settlement Amount) plus actual costs incurred by Class Counsel and a Court-approved Service Award (of $15,000.00) to the Named Plaintiff.

be donated to the Community Empowerment Fund, the *cy pres* designee.  [*Id*. at 6 ¶ 21; *id.* at 10, 22 §§ 1.3, 3.1(F).]  There is no reversion to Defendant.  [*Id*. at 6 ¶ 21.]

### C.    Release

The Settlement Agreement provides that Class Members who have not opted out, completed the Claim Form, or otherwise complied with the Notice and Claim Forms, will fully, finally, and forever release Defendant from all claims concerning:

> (i) the claims and facts alleged in the Litigation (or in the EEOC Action or Named Plaintiff's underlying EEOC charge, Charge Number 436-2011- 00409, or in the EEOC's Determination in the EEOC Action), or (ii) their application for employment with Carolina First Bank during the class period, including, without limitation whatsoever, any and all claims, causes of action or rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., or any other federal, state or local law, regulation or ordinance prohibiting employment discrimination (the "Released Claims").

[*Id*. at 24 § 4.1(A).]

### III.    The Notice Plan and Class Member Response

Pursuant to the Notice Plain approved by this Court in the Preliminary Approval Order, the parties and the Settlement Claims Administrator gave direct notice of their proposed Settlement to the Settlement Class Members; the Settlement Claims Administrator received and processed 108 claims returned by those Class Members. [Doc. 27-2 at 7.]  The Notice Plain was designed to reach identified Class Members through First-Class Mail.  [Doc. 19 at 30.]  The parties hired Rust Consulting, Inc. (the "Settlement Claims Administrator") to provide notification services for this action pursuant to the Notice Plan.  [Doc. 27-2 at 40.]  The parties provided the Settlement Claims Administrator with a mailing list (the "Class List") containing Class Member's names, Social Security Numbers,

5

last known mailing address, and phone numbers, along with other information. [*Id*. at 42.] The Settlement Claims Administrator processed and updated the Class List using the National Change of Address Database. [*Id*.] The Settlement Claims Administrator mailed Class Notices to all 375 Class Members identified in the Class List via First Class Mail on March 7, 2019, attempted other rounds of mailing and re-mailing of the Class Notices at later dates, performed address traces of Class Members for Class Notices that were returned as undeliverable, and mailed reminders to Class Members of relevant deadlines. [*Id*.] The Settlement Claims Administrator was unable to mail Class Notices to 17 Class Members as they were returned undeliverable after the address traces and re-mailings. [*Id*. at 43.]

The Class Notices contained information about the nature of the action, the definition of the Class, the Class's claims against the Bank, the Settlement's terms, how Class Members could receive a payment, how to opt out of the Settlement, how to object to the Settlement, the details of the fairness hearing, the binding effect of the judgment on Class Members, and other pertinent information. [Doc. 27-2 at 48–57.] In addition to the mailed Class Notices, the Settlement Claims Administrator also obtained a toll-free telephone number, a facsimile number, an email address, and a class action website, www.CarolinaFirstBankJobApplicantSettlement.com. [*Id*. at 41.] The website provided copies of the Class Notice, the Preliminary Approval Order, and the Settlement Agreement for viewing, downloading and/or printing, and allowed Class Members to securely submit a Claim Form online. [*Id*.]

In order to receive an award under the Settlement Agreement, Class Members were required to file a Claim Form with the Settlement Claims Administrator.  Claim Forms, attached to the mailed Class Notices and available online, explained how to fill out the Claim Form and further explained that the Form had to be returned on or before May 6, 2019.  [*Id*. at 45.]

In response to the notice provided to Class Members, 108 valid Claim Forms were filed with the Settlement Claims Administrator, of which 38 Class Members were unemployed and 70 Class Members were employed for purposes of the Allocation Formula.  [*Id*. at 7, 45].  Further, no Class Members filed objections in response to the notice and no Class Members opted out.  [*Id*. at 45–46.]

Additionally, the Settlement Claims Administrator was contacted by 55 individuals who self-identified as meeting the criteria for membership in the Class ("self-ids"), but who were not included by Defendant in the Class List.  [*Id*. at 43.]  The Settlement Claims Administrator forwarded the information regarding these 55 self-ids to Class Counsel and Defendant's counsel to determine if the self-ids met the criteria for Class membership.  [*Id*.]  The Settlement Claims Administrator requested further information from certain self-id individuals.  [*Id*.]  In the end, it was determined that none of the self-ids met the criteria for membership in the Class.[4]  [*Id*. at 44.]

---

[4]At the fairness hearing, the Court asked Class Counsel for an explanation as to why so many individuals self-identified as Class Members and why none of them were determined to meet the criteria for Class membership.  Class Counsel explained that these individuals did not meet the criteria based on a review of the records provided by Defendant as well as any documentation provided by the self-ids.  Class Counsel stated that the notice published on the class action website likely engendered the substantial response by the self-ids.

IV.     **Motion for Final Approval and Fairness Hearing**

On June 3, 2019, Plaintiff moved for final approval of the Settlement, an award of attorneys' fees and costs, and a Service Award for the Class Representative, all pursuant to the Settlement Agreement and the Court's Preliminary Approval Order.  [Docs. 27, 28, 29.]  Defendant consents to the motions.

On June 18, 2019, pursuant to Federal Rule 23(e)(2), this Court held a fairness hearing.  [Doc. 33.]  At the fairness hearing, Class Counsel presented the above-referenced motions and the Court questioned the parties about the notice provided to Class Members pursuant to the Notice Plan; the claims process administered by the Settlement Claims Administrator, including resolution of the self-ids' claims; the adequacy of Settlement, including the expected distribution of the Settlement Fund based on the number of Claims Forms filed in light of the allocation formula; the Class Representative's contributions to this action and entitlement to a Service Award; and Class Counsel's requested attorney's fees and costs.  No objectors appeared at the fairness hearing.  The Court orally granted final approval of the Settlement Agreement and Class Counsel's requested Service Award for the Class Representative and attorney's fees and costs.  The analysis below clarifies the basis for the Court's findings and conclusions.

## <u>ANALYSIS</u>

I.     **Class Certification**

The Court must determine whether to grant final certification of the Settlement Class.  As noted, Plaintiff alleges that Defendant used a credit check screening process that systematically eliminated qualified African Americans from jobs based on their race

in violation of Title VII.  As provided in the Settlement Agreement, the Settlement Class consists of "[a]ll African-American applicants for employment to Carolina First Bank who were coded by Defendant as having been rejected for adverse credit from April 29, 2010, to April 30, 2011."  [Doc. 8-2 at 11 ¶ 1.7.]  The parties agree that there are approximately 375 class members in this Settlement Class.  [Doc. 27-2 at 42.]

### A.  Legal Standard

Class certification and approval of a class settlement are governed by Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011).  To certify the Class, Plaintiff must demonstrate that the proposed class certification satisfies the prerequisites set forth within both Rule 23(a) and Rule 23(b).  First, Plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, she must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### B.  Analysis

As discussed below, the Court finds the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3) in this case for class certification.

9

### 1.     Rule 23(a) Requirements

#### a.     Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no specific rule as to how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members justifies a class. *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005). Here, the Court finds that numerosity is satisfied because joinder of the 375 Class Members would be impracticable.

#### b.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality is satisfied if only one legal or factual issue is shared by all class members. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (emphasis in original). Even a single common question is sufficient to meet this requirement. *Id.* at 359.

In this case, all class members were exposed to the same screening process involving credit checks, resulting in adverse hiring decisions by the Bank, because "Defendant had a *single, uniform* credit check procedure that was used for *all* job

10

applicants." [Doc. 1 at 8 (emphasis in original).] Thus, common questions of law and fact in this action stem from the screening process, and involve resulting discrimination on the basis of race. [*Id*.] Accordingly, the Court finds that the commonality requirement is met.

### c.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998). "The question of typicality focuses on the similarity of the legal and remedial theories of claims of the named and unnamed plaintiffs." *Bates v. Tenco Servs., Inc.*, 132 F.R.D. 160, 163, *order amended by* 132 F.R.D. 165 (D.S.C. 1990). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Where "the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006).

Plaintiff's claims are both factually and legally similar to those of the Class because Defendant's alleged discrimination, resulting from the screening policy, affects Plaintiff and all Settlement Class Members in the same way. [Doc. 1 at 8.] This is sufficient to satisfy the typicality requirement.

11

### d.    Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Determining adequacy of representation, therefore, requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class."  *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 WL 127930, at *8 (D.S.C. Jan. 8, 2015) (citations omitted).  This inquiry "tend[s] to merge" with the commonality and typicality criteria.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Id.*

In the Preliminary Approval Order, the Court appointed Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel.  The Class Representative's interests are directly aligned with the interests of absent Class Members.  Both the Class Representative and each Class Member have been damaged by the same conduct, and each has the same interest in achieving the maximum possible recovery.  The experience of Class Counsel was set out in the Preliminary Approval Order.  The Court finds that Class Counsel and Plaintiff have prosecuted this action vigorously on behalf of the Class.  The adequacy of representation requirement is therefore satisfied.

### 2. Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), Plaintiff must also satisfy the two requirements of Rule 23(b)(3) to certify a class. First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" ("predominance"). Fed. R. Civ. P. 23(b)(3). And, second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). *Id*. The Court finds that both criteria are met in this case.

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted). Regarding whether common questions of law predominate, "one must initially identify the substantive law issues which will control the outcome of the litigation." *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir. 1978).

Here, the Court finds that the common questions raised by Plaintiff's claims predominate over questions affecting only individual members of the Class. Plaintiff alleges that Defendant's screening policy affected all Class Members in the same way

through the same set of actions and decisions.  [Doc. 1 at 8–9.]  Accordingly, the issues

of fact arising from Defendant's conduct predominate over any individual issues, making

class treatment appropriate.  Likewise, Plaintiff's claim for discrimination, like that of all

Class Members, arises under Title VII, and common questions of law therefore

predominate.

### b.    Superiority

The superiority requirement tests whether "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  The Court must consider four non-exclusive factors: (1) the interest of each class

member in individually controlling the prosecution or defense of separate actions; (2) the

extent and nature of any litigation concerning the controversy already commenced by or

against the class; (3) the desirability of concentrating the litigation of the claims in the

particular forum; and (4) the difficulties likely to be encountered in the management of a

class action.  *Id.*; *see also Meredith v. Mid-Atlantic Coca Cola Bottling Co.*, 129 F.R.D. 130,

134 (E.D. Va. 1989).

Here, because common legal and factual questions predominate over individual

ones, and taking into account the large size of the Class, the Court finds that the judicial

economy achieved through common adjudication renders class action a superior method

for adjudicating the claims of the Class.  The expense of individual actions, weighed

against the potential individual recovery of the vast majority of class members here, would

be prohibitive.  Moreover, the burden on the courts of adjudicating hundreds of separate

actions alleging Defendant's discriminatory practices would be significant.  Thus,

certification of these claims as a class action would be superior to any other available

method for the fair and efficient adjudication of the controversy—particularly in light of the Settlement.  As the Supreme Court has explained, "[c]lass actions also may permit the [plaintiffs] to pool claims which would be uneconomical to litigate individually . . . [because] most of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

### C.     Conclusion

Accordingly, pursuant to Rule 23, the Court approves and certifies the following Settlement Class, as defined in the Settlement Agreement:

> All African-American applicants for employment to Carolina First Bank who were coded by Defendant as having been rejected for adverse credit from April 29, 2010, to April 30, 2011.

There are 375 Class Members, satisfying the numerosity requirement.  Named Plaintiff Robinson is typical and an adequate representative of the Settlement Class she seeks to represent because her interests are co-extensive with those of Settlement Class Members and she has retained experienced counsel to represent her.  Outten & Golden LLP and Falls Legal LLC, which the Court previously appointed as Class Counsel, satisfy the adequacy requirements of Rule 23(a)(4).  Plaintiff raises common questions, and the Settlement Class satisfies the predominance and superiority requirements for certification under Rule 23(b)(3) for settlement class purposes.  The Court therefore certifies the Settlement Class pursuant to Rule 23.

## II.     Final Approval of the Settlement Agreement

Plaintiff seeks final approval of the terms set forth in the Settlement Agreement. "Rule 23(e) requires that the court approve any proposed settlement or compromise in a

15

class action suit after notice of the settlement be given to all class members, after a hearing, and after finding that the settlement is fair, reasonable, and adequate." *Case v. French Quarter III LLC*, No. 2:12-cv-02518-DCN, 2015 WL 12851717, at *6 (D.S.C. July 27, 2015). Here, notice of the Settlement, as well as an opportunity to dispute the Settlement or opt-out, was provided to Class Members in accordance with the Court-approved Notice Plan. No objections and no opt-outs were filed by Class Members. The Court held a fairness hearing at which the parties all agreed to the Settlement. Accordingly, for the reasons below, the Court finds that the Settlement Agreement is fair, adequate, and reasonable to satisfy the requirements of Rule 23(e).

### A.     Legal Standard

"The court's function in assessing a proposed class settlement is to determine whether it is fair, reasonable, and adequate to class members." *Case*, 2015 WL 12851717, at *7 (citing Fed. R. Civ. P. 23(e)). "Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D. N.Y. 1999) (internal quotations omitted). In determining whether to grant final approval of a proposed class action settlement as fair, reasonable, and adequate, courts have evaluated the following factors:

1.     the fairness of the settlement negotiations and the views and experience of counsel;

2.     the relative strength of the parties' cases as well as the uncertainties of litigation on the merits;

3.     the complexity, expense and likely duration of the litigation;

16

      4.      the adequacy of the settlement amount viewed against the risks and expenses of continued litigation; and

      5.      the stage of the litigation, including the factual record developed by the parties.

*S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990).  "In a class action settlement, there is a presumption of fairness, reasonableness, and adequacy when it is achieved through arm's length negotiations between experienced and capable counsel after meaningful discovery."  *Case*, 2015 WL 12851717, at *7 (D.S.C. July 27, 2015) (citations omitted).

The driving concern of the Court's fairness inquiry is whether the proposed settlement "was reached as a result of good-faith bargaining at arm's length, without collusion . . . ."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 144, 159 (4th Cir. 1991).  To this end, the Fourth Circuit has directed courts to evaluate the following factors in determining the fairness of a class action settlement:  "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of  . . . class action litigation."  *Id.*  The Fourth Circuit has further identified the following factors relevant to the court's assessment of the adequacy of the settlement: (1) whether the settlement was the product of good faith bargaining, at arm's length, and without collusion; (2) the relative strength of the parties' cases, as well as the uncertainties of litigation on the merits, and the existence of difficulties of proof or strong defenses that the plaintiffs are likely to encounter at trial; (3) the complexity, expense, and likely duration of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement by class members.  *Id.* at 159; *see also*

17

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). As explained below, each of these factors support final approval of the Settlement in this case.

### B.     Analysis

#### 1.     Notice to Class Members

The Court finds that the Notice Plan provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts; and such notice constitutes the best notice practicable under the circumstances, meeting and exceeding the requirements of Rule 23 and all other applicable law. Notice of the Settlement was provided to the Class in accordance with the Notice Plan approved in the Court's Preliminary Approval Order, including direct mail notice and publication an the class action website. The Court finds the Notice and Claim Forms provided Class Members with accurate, fair, and reasonable information regarding the class action and the Settlement. The form and manner of notice were the best practicable notice to Class Members and satisfies due process.

#### 2.     The Settlement is Fair

As noted, "[t]he decision to grant final approval of a class action settlement involves the Court's consideration of several factors, including: (1) the amount offered in settlement; (2) the risks inherent in continued litigation; (3) the extent of discovery completed and the stage of the proceeding when the settlement was reached; (4) the risk, complexity, expense, and likely duration of the litigation absent settlement; (5) the experience and views of class counsel; and (6) the response of Class Members to the Settlement." *Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 926 (D.S.C. 2011). Upon review,

the Court finds that each relevant factor supports final approval of the Settlement in this case.

### a.     Posture of the Case

Here, the Settlement Agreement was reached after the EEOC issued its cause determination in Plaintiff's favor, Plaintiff's counsel engaged in extensive discovery, and the parties engaged in settlement negotiations, reaching an agreement prior to filing the instant litigation.  [Doc. 8-2 at 3–4 ¶¶ 8–12.]  While the settlement was reached prior to the commencement of this action, the parties engaged in lengthy adversarial proceedings, involving the EEOC and a mediator.  Further,  because the parties have negotiated the contested factual and legal issues and engaged in formal settlement mediation with the assistance of a professional mediator, "[t]hese adversarial encounters dispel any apprehension of collusion between the parties."  *In re NeuStar, Inc. Sec. Litig.*, No. 1:14-cv-885-JCC-TRJ, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (finding, under similar circumstances, including the assistance of a professional mediator, that the factors weighed in favor of the fairness of the proposed settlement); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571–72 (E.D. Va. 2016).  The Court consequently finds that the litigation history and posture of the present case weighs in favor of final approval.

### b.     Extent of Discovery

Here, Class Counsel conducted a "thorough investigation" of the claims before initiating this action.  [Doc. 8-2 at 3 ¶ 8.]  Among other things, Class Counsel obtained and reviewed documents from Plaintiff related to her employment application and credit history records and evaluated the EEOC's investigation into Plaintiff's claims, including position

statements and discovery with Defendant, such as documents and information regarding Defendant's screening process, hiring guidelines, and application data.  [*Id*. at 3–4 ¶¶ 9–11.]  Moreover, during the mediation process, Class Counsel assessed possible damages based on information provided by Defendant and Class Counsel's own evaluation of the merits; the parties drafted mediation briefs setting forth their respective positions as to liability and damages and exchanged those briefs before mediation so that each side could evaluate the strength of the other's claims; and Plaintiff's Counsel analyzed company data and reviewed extensive documents, including credit history screening policies and procedures, hiring guidelines, and applicant data of the Bank, all of which informed their opinion of the relative advantages and drawbacks of early settlement.  [*Id*. at 4–5 ¶ 14.]  This factor weighs in favor of the fairness of the Settlement Agreement and supports final approval.

### c.     Circumstances of the Negotiations

The Court concludes that the Settlement Agreement is non-collusive and was reached in good faith based on the circumstances of the negotiations as recited in the parties' filings.  Here, after extensive discovery, the parties agreed to mediate the dispute with the assistance of an experienced and well-respected employment and class action law mediator, Hunter Hughes.   [*Id*. at 4  ¶¶  13–14.]    "The  fact  that  negotiations  were 'adversarial' and were conducted at 'arm's length' helps dispel any concern that counsel colluded in reaching agreement."  *Temp. Servs.*, 2012 WL 13008138, at *10 (quoting *In re Microstrategy*, 148 F. Supp. at 665).  Moreover, supervision by a mediator lends an air of fairness to agreements that are ultimately reached.  *S.C. Nat. Bank v. Stone*, 139 F.R.D.

20

335, 345–46 (D.S.C. 1991) ("Although a magistrate judge's supervision is not mandatory in order to determine a settlement is fair, such participation can insure that the parties will negotiate in good faith without collusion."); *Vaughns v. Bd. of Educ.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998) (explaining the "[s]ettlement negotiations were protracted and much of the time [was] . . . supervised by a Court-appointed mediator" and noting the discussions were detailed and adversarial).

### d.      The Experience of Counsel

Both Plaintiff and Defendant are represented by competent and experienced counsel, which weighs in favor of settlement approval. As noted, Class Counsel has ample experience in class actions and settlement of the same. Defendant is represented by Littler Mendelson P.C., which is a well-known, highly skilled and experienced employment and labor law firm. Further, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Here, Class Counsel has carefully investigated and evaluated Plaintiff's claims and believes, based on significant discovery and after arm's length negotiations and mediation, that the settlement is fair, adequate, and reasonable. [Doc. 8-2 at 5 ¶ 19.]

Accordingly, in light of all the factors above, the Court finds that the Settlement is fair.

### 3.      The Settlement is Adequate

The Court is also satisfied that the terms of the Settlement Agreement are adequate. "The adequacy analysis 'weigh[s] the likelihood of the plaintiff's recovery on the

merits against the amount offered in settlement.'" *Brown*, 318 F.R.D. at 573 (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-cv-2424-PJM, 2013 WL 3322294, at *3 (D. Md. June 28, 2013)).  As noted, in assessing the adequacy of a proposed settlement, the Court considers the following five factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.  *Jiffy Lube*, 927 F.2d at 159.  The Court addresses each factor in turn below.

### a.     Relative Strength of Plaintiff's Case and Existence of Difficulties of Proof or Strong Defenses

The first and second factors require the Court to examine "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case."  *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009).  While Plaintiff undoubtedly believes that her case is sound, and has noted the EEOC issued a cause determination in her favor, Defendant "denies that it committed any wrongdoing or violated Title VII and vigorously disputes the claims asserted in the litigation."  [Doc. 8-2 at 6 ¶ 22.]  Further, while the parties have engaged in extensive pre-litigation discovery, Defendant has not had the opportunity to test Plaintiff's legal claims through litigation discovery and dispositive motions.  Thus, Plaintiff, while confident of her claims, faces significant risks associated with continued litigation. Indeed, Class Counsel has explained, "we recognize the costs and risks of prosecuting this litigation through class certification, summary judgment, trial, and appeal," noting it is in the

interest of all members of the Settlement Class to resolve the claims in a settlement to avoid such risks. [Doc. 8-2 at 5 ¶ 19.] This consideration supports the adequacy of the Settlement Agreement. Further, as to the existence of any difficulties of proof, while Plaintiff is confident in the strength of her case, it is unclear to what extent litigation might have presented issues that underscore the desirability of this Settlement.

### b.      Anticipated Duration and Expense of Additional Litigation

The third factor examines the anticipated duration and expense of additional litigation. As recognized by Class Counsel, in a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals. Likewise, the expenses for such a complex case, to include the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties. On the other hand, the Settlement provides significant relief for the Settlement Class quickly. This factor therefore weighs in favor of the adequacy of the proposed Settlement Agreement.

### c.      Insolvency of Defendant

The fourth factor involves the solvency of Defendant and the likelihood of recovery on a litigated judgment. There is no evidence that Defendant is in danger of becoming insolvent, and the Court notes that Defendant was acquired by TD Bank, N.A. in September 2010. [Doc. 1 at 5.] As such, this factor does not impact the Court's approval of the Settlement Agreement.

### d.     Degree of Opposition

The final factor addresses the degree of opposition to the proposed Settlement.  As noted, Class Members were provided with the opportunity to opt out or object to the terms of the Settlement Agreement.   There have been no objections to the Settlement Agreement and there have been no opt outs.  The Court finds that the lack of opposition to the Settlement further indicates that the Settlement is fair, adequate, and reasonable. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court . . .").  As noted by Class Counsel, approximately twenty-nine percent of Class Members submitted Claim Forms, which is a higher participation rate than the claims rates approved by other courts in job application discrimination cases.  [Docs. 27-1 at 25–26; 27-2 at 7]; *see also Rhom v. Thumbtack, Inc.*, No. 16-cv-02008-HSG, 2017 WL 4642409, at *6 (N.D. Cal. Oct. 17, 2017); *Watkins v. Hireright, Inc.*, No. 13-cv-1432-BAS-BLM, 2016 WL 5719812, at *3 (S.D. Cal. Sept. 30, 2016).  Thus, the Class Member's participation rate further weighs in favor of approval.

### C.     Conclusion

The Court has reviewed the Settlement Agreement, along with the parties' submissions, and the presentations by Counsel at the final fairness hearing.  Having weighed the relevant factors, the Court finds that the Settlement Agreement is fair, reasonable, and adequate under Rule 23, and therefore approves the Settlement Agreement.  The Court further finds that the Settlement Agreement is binding on all Members of the Settlement Class who have not timely and properly opted out.  The

relevant terms of the Settlement Agreement are summarized above, but the Court makes the following findings as to the specific terms of the proposed Settlement Agreement identified below.

### 1.    Settlement Amount and Benefits to Class Members

Defendant has agreed to pay a Gross Settlement Amount of $450,000 to fully resolve and satisfy all amounts to be paid to the Class Members, the Service Award to Named Plaintiff, and Class Counsel's attorneys' fees and costs. [Doc. 8-2 at 21 ¶ 3.1.] In exchange for a release of claims [*see id.* at 24–26 § 4], Class Members are entitled to a settlement check from the Net Settlement Fund. [*Id*. at 23 ¶ 3.5.] As set forth in the allocation plan, each Class Member's distribution from the Net Settlement Fund will be determined by the Settlement Claims Administrator in accordance with the allocation formula based on whether the Claimant was employed or unemployed at the time of their application for employment with Defendant.[5] [*Id*. at 23 ¶ 3.5(B).]

The Court finds the $450,000 of the Gross Settlement Amount to be a reasonable amount of compensation for the claims brought in this case. This is a significant sum awarded to Class Members in the face of what could be an expensive and complex case to present to a jury, as Defendant "denies that it committed any wrongdoing or violated Title VII and vigorously disputes the claims asserted in the litigation." [Doc. 8-2 at 6 ¶ 22.] There is a substantial risk that this case could conclude adversely to the interests of

---

[5]At the fairness hearing, Class Counsel provided a summary to the Court as to the anticipated payments to Class Members pursuant to the allocation formula in light of the responses by the Class Members. The Court is satisfied that the anticipated payout under the allocation formula, as presented by Class Counsel at the fairness hearing, is fair, reasonable, and adequate, and conforms to the distribution scheme pursuant to the Settlement Agreement.

Plaintiff and the Class, thus any compromise accepted by Plaintiff in agreeing to the sum of this Settlement reflects the risks inherent in continuing litigation.  [*Id.* at 5 ¶ 19.]

Defendant will transfer the Gross Settlement Amount of $450,000 to the Qualified Settlement Fund established by the Settlement Claims Administrator within fourteen (14) days after the Effective Date of the Settlement, which is defined in the Settlement Agreement as the later of:  (a) if there is no appeal of the Court's Final Approval Order, the date that is thirty-five (35) days after entry of such Order and Dismissal of the Litigation; or (b) if there is an appeal of the Court's Final Approval Order, the day after all appeals are finally resolved in favor of final approval of the Settlement Agreement.  The Qualified Settlement Fund shall be an interest-bearing escrow account established by the Settlement Claims Administrator, as escrow agent.

The Gross Settlement Amount constitutes the total settlement cash outlay by Defendant in connection with the resolution of this action.  No other money shall be separately paid by Defendant in connection with this Settlement, except, if the Settlement Administration Costs exceed the funds available in the Net Settlement Fund, defined in the Settlement Agreement as the remainder of the Gross Settlement Amount after deductions for (1) Court-approved attorneys' fees and costs for Class Counsel, and (2) Court-approved Service Award to Named Plaintiff, after all payments are made to Settlement Class Members, Defendant is responsible for paying the balance of Settlement Administration Costs up to $25,000.00.  Any remaining settlement administration costs will be paid out of the Gross Settlement Amount.

Named Plaintiff and each individual Settlement Class Member who has not timely opted out will be bound by the terms and conditions of the Settlement Agreement and the

26

Final Approval Order and will release all claims as set forth in the Settlement Agreement, by operation of this Court's entry of the Final Approval Order, regardless of whether the Settlement Class Member has submitted a Claim Form.

### 2.     Settlement Administration Costs

The Settlement Agreement provides that, in the event any funds remain in the Net Settlement Fund after all payments are allocated to the Claimants, the remaining funds will be used to pay the Settlement Administration Costs in the first instance.  Further, in the event that the funds remaining in the Net Settlement Fund are not sufficient to pay all of the Settlement Administration Costs, Defendant is responsible for paying the balance of the settlement administration costs up to $25,000.00, and any remaining settlement administration costs will be paid out of the Gross Settlement Amount.  [Doc. 8-2 at 21–22 § 3.1(B).]  The Court approves this agreement between the parties.

According to the affidavit prepared by the Settlement Claims Administrator, the total cost for the administration of the Settlement, including fees already incurred and future costs for completion of the administration, is estimated to be $46,500.  [Doc. 27-2 at 46.] This amount is to be paid in accordance with the terms set forth in the Settlement Agreement, as summarized above.

### 3.     Attorney's Fees and Costs and Service Award to Plaintiff

In accordance with the Settlement Agreement and the Court's Preliminary Approval Order, Class Counsel has filed a motion for attorneys' fees and costs and a motion for approval of the Service Award to Plaintiff.  The Court finds that the provisions in the Settlement Agreement related to the award of attorneys' fees and costs to Class Counsel

and the Service Award to Plaintiff are fair and reasonable and approves those awards. The Court will separately address these motions in the sections below.

## III.     Attorneys' Fees and Costs

Class Counsel has applied for attorneys' fees in the amount of $150,000, which is one-third of the Gross Settlement Amount, as well as reimbursement of actual out-of-pocket costs in the amount of $19,329.76.  [Docs. 28; 28-1.]  As explained below, the Court approves the requested attorney's fees and costs because they are reasonable compensation under the percentage of the common fund method, as cross-checked by the lodestar method.

### A.     Legal Standard

Attorney's fees in class action cases are subject to court approval, and the procedure for awarding attorneys' fees and costs in the class action context is controlled by Rule 23(h), which provides that "in a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Additionally, it is well-settled that, "[w]hen a class settlement results in a common fund for the benefit of class members, reasonable attorney's fees may be awarded from the common fund."  *Smith v. Res-Care, Inc.*, No. 3:13-cv-5211, 2015 WL 6479658, at *7 (S.D.W. Va. Oct. 27, 2015) (citing Fed. R. Civ. P. 23(h)); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  "District courts in the Fourth Circuit routinely look to the factors set forth in *Barber v. Furniture Distributors, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), to assess the reasonableness of attorneys' fees."  *Gray v. Talking Phone Book*, No. 8:08-cv-01833-GRA, 2012 WL 12978113, at *8 (D.S.C. Aug. 13, 2012).  Indeed, Local Civil

Rule 54.02(A), D.S.C., expressly provides that "any petition for attorney's fees shall comply with the requirements set out in *Barber*" and that the "[*Barber*] requirements are also relevant when a common fund is created and a percentage-fee method is sought in the application." The factors identified by the Fourth Circuit in *Barber* to evaluate an award of attorneys' fees include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at 226, n. 28.

"In general, attorneys' fees are required to be reasonable, and the court must make a determination of a reasonable fee award accompanied by detailed findings of fact with regard to the factors considered." *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 WL 5037836, at *2 (D.S.C. Aug. 26, 2015) (citing *Barber*, 577 F.2d at 226). "There are two general methods for assessing awards of attorney's fees in settlements of class action cases: (1) the percentage-of-the-fund method and (2) the lodestar method." *DeWitt v. Darlington Cnty.*, No. 4:11-cv-00740, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013). Reasonableness can be determined using either the lodestar method or the percentage of recovery method. *In re Mills Corp.*, 265 F.R.D. at 260. "The

29

percentage-of-the-fund method allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class.  The lodestar method determines the appropriate amount of attorney's fees by applying the factors from . . . [*Barber*] to determine a 'lodestar' figure by multiplying the number of hours expended by a reasonable hourly rate.  Even when the percentage of recovery method is used, courts often use the lodestar method to 'cross-check' the award of attorney's fees."  *In re MI Windows & Doors Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001-DCN, 2015 WL 4487734, at *1 (D.S.C. July 23, 2015) (citations omitted).  By "using the percentage of fund method and supplementing it with the lodestar cross-check," the court "take[s] advantage of the benefits of both methods."  *In re Mills Corp.*, 265 F.R.D. at 261.

B.    **Analysis**

1.    **Attorneys' Fees**

Plaintiff has requested attorneys' fees in the amount of one-third of the Gross Settlement Amount, or $150,000.  The Court finds that Counsel's requested award is reasonable under the percentage method used in common fund cases, as cross-checked by the lodestar method, and under the *Barber* factors.

a.    **The Percentage Method**

"In the context of class actions, the vast majority of courts use the percentage of recovery method, which is advantageous because it ties the attorneys' award to the overall result achieved rather than the number of hours worked."  *McClaran*, 2015 WL 5037836, at *3 (citing *Loudermilk Servs., Inc. V. Marathon Petroleum Co., LLC*, 623 F. Supp. 2d 717, 717–18 (S.D. W. Va. 2009)).  "Although the Fourth Circuit has not articulated a preferred

30

method for determining fees in common-fund cases, there is a 'consensus among courts that the percentage method is the superior method for calculating attorneys' fees from the common-fund.'" *Gray*, 2012 WL 12978113, at *7 (quoting *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009)) (collecting cases). In evaluating the reasonableness of a fee award under the percentage method, courts have examined the following seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Case*, 2015 WL 12851717, at *10 (quoting *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 733 (3d Cir. 2001)). The Court finds that each of these factors weigh in favor of approving the requested attorneys' fee award in this case. The Court will briefly evaluate these factors, and will provide further analysis in the section below to the extent that these factors overlap with the *Barber* factors.

Class Counsel has requested a fee of one-third of the Gross Settlement Amount, pursuant to the Settlement Agreement. The scope of Class Counsel's effort has been significant. Class Counsel thoroughly investigated Plaintiff's claims and the potential Class claims against Defendant. In addition to conducting relevant discovery, Class Counsel secured a favorable EEOC charge. Then, following arm's length settlement negotiations and mediation, the parties entered into a Settlement Agreement, which the Court finds benefits the Plaintiff and the Class. Class Counsel has achieved a substantial payout to

Class Members.  Class Counsel's experience, skill, and reputation weighs in favor of approving the requested award.  Likewise, Defendant was represented by experienced counsel.  Counsel for all parties acted efficiently, securing a Settlement early in this case and avoiding costly and extensive litigation.

Class Counsel's efforts resulted in a significant Settlement of $450,000 for approximately 375 Class Members.  Pursuant to the allocation formula noted above, each individual Class Member will receive excellent individual recovery for their claims, which, without the effort of Plaintiff and Class Counsel, would likely be time barred and face significant risk and expense in individual litigation.  Further, the Court-approved Notice Plan stated that Counsel would seek Court approval of the attorneys' fee award, and no Class Member has objected to the requested attorneys' fees.  The lack of objections supports the reasonableness of the requested award and weighs in favor of approving the fee request.

The hours and expenses incurred in pursuit of the Class claims are reasonable and demonstrate the scope of Class Counsel's contributions.  And, while Class Counsel incurred a total lodestar in the amount of $186,022.50, Plaintiff seeks an attorneys' fee award of $150,000.  The requested fee falls within the range of previous awards in common fund cases.  *Gray*, 2012 WL 12978113, at *8 (collecting cases).  In light of the factors above, as wells as the *Barber* factors explained below, combined with a lodestar cross-check even without a multiplier enhancement, the Court finds Plaintiff's request is appropriate under the percentage method to compensate the Class Counsel who have achieved an excellent resolution for the Class.

### b.     The Lodestar Cross-Check

The Court further finds that a lodestar cross-check supports Counsel's requested fees.  As noted, to apply the lodestar method, the Court determines the fee award by multiplying the number of hours reasonably worked by a reasonable billing rate.  Here, Plaintiff's Counsel, paralegals, and supporting staff spent approximately 360.85 hours prosecuting this action.  Counsel submitted affidavits summarizing the number of hours worked and the hourly rates billed.  [Doc. 27-2 at 8-11, 62.]  Multiplying the number of hours worked by the billing rate results in a lodestar in the amount of $186,022.50.  Here, even without a multiplier enhancement, the fee award requested by Class Counsel is reasonable, as the lodestar exceeds the fee award requested.  *See Jones*, 601 F. Supp. 2d at 766 (collecting cases) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

### c.     The *Barber* Factors

District courts in the Fourth Circuit routinely look to the factors set forth in *Barber* to assess the reasonableness of attorneys' fees, and, although *Barber* was not a common-fund case, this Court's consideration of the twelve *Barber* factors supports Class Counsel's request for $150,000.00 in attorneys' fees.  Further the Local Civil Rules in this District require an analysis of the *Barber* factors in awarding attorneys' fees.  Accordingly, the Court considers the *Barber* factors applicable to the current action.

### (1)     Time and Labor Expended

As noted, Class Counsel spent approximately 360.85 hours, including hours accumulated by attorneys, paralegals, and supporting staff, in prosecuting, negotiating, and

33

securing approval of the Settlement in this case.  The total lodestar based on 360 hours is $186,022.50.  The Court finds that the time and labor identified by Class Counsel was necessary to ensure the result for Plaintiff and the Class, while avoiding the high costs associated with commencing litigation.  The Court finds the number of hours expended in this case is particularly reasonable in light of the fact that Class Counsel competently investigated the claims at issue in this case, pursued a favorable EEOC charge concerning the claims, and negotiated an excellent Settlement with Defendant for Plaintiff and the Class.

### (2)     Novelty and Difficulty of Questions Raised, and the Skill and Experience Required to Litigate Them

This is a complex case and Counsel has ample experience in class actions and settlement of the same.  The attorneys at Outten & Golden LLP and Falls Legal LLC who prosecuted this case are experienced class action and employment lawyers with good reputations among the class action and employment bars.  This case involved novel and complex issues, including Plaintiff's race discrimination claim based on the use of credit history checks in employment applications.  The parties engaged in lengthy adversarial proceedings, involving the EEOC and a mediator prior to settling the claims.  And, while all Title VII disparate impact claims are subject to considerable risks at class certification and trial, this is especially true here, where few courts have considered the merits of race discrimination claims like those in this action.  *See, e.g., Kay Co. V. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 465 (S.D. W. Va. 2010) ("The case is more complex when the applicable laws are new, changing, or unclear.").  The difficulty of this case appears to be

appropriately reflected in the hours submitted by Plaintiff's counsel.  The Court finds that Class Counsel's ability to negotiate the Settlement demonstrates their quality, skill, and efficiency.

### (3)     Counsel's Expected Compensation, the Customary Fee, and the Preclusion of Other Employment

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a contingency basis.  Counsel's entitlement to payment was entirely dependant upon achieving a good result for Plaintiff and the Class, and Counsel faced significant risk of nonpayment.  Contingency fee arrangements are customary in class action cases and such arrangements are usually one-third or higher. *See Temp. Servs., Inc.*, 2012 WL 4061537, at *8 (noting that "[a] one-third fee award from the common fund in this case is consistent with, if not below, what is routinely privately negotiated in contingency fee litigation"); *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 483 (D. Md. 2014).  Thus, the Court finds that the attorneys's fee award requested in this case is reasonable in light of awards in similar cases.

Further, as noted above, Class Counsel and staff spent more than 360 hours prosecuting this action, resulting in a lodestar of $186,022.50.  The lodestar amount is greater than the requested fee.  Thus, the award here is reasonable using the lodestar cross-check.

Based on the substantial time and resources devoted to the investigation and negotiation required to achieve the Settlement in this case, Class Counsel has been precluded from working on other matters.  This time commitment on behalf of Plaintiff and

the Class represents a significant opportunity cost in terms of other cases on which Counsel could have worked.  Accordingly, these factors support the requested fees.

### (4)    Results Obtained for the Class
### and the Amount in Controversy

The Fourth Circuit has noted that the most critical factor to consider in evaluating an award of attorneys' fees is the degree of success obtained.  *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006); *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).  Here, the total value of the Settlement is $450,000 for approximately 375 Class Members, which is a significant sum awarded to the Class Members.  Each Class Member will receive recovery reflecting a substantial portion of Class Members' potential damages for the denial of positions with Defendant, accounting for mitigation.  The allocation formula fairly and adequately compensates the Class Members based on their potential damages associated with the status of their employment at the time they applied for a position with Defendant. This is an excellent individual recovery for Class Members to address the relative hardships of being denied employment with Defendant.

Additionally, courts have noted that "there is a significant public benefit in having experienced attorneys litigate cases" such as this one, which may impact other similar situations in the employment context.  *See, e.g., McClaran*, 2015 WL 5037836, at *4. Class Counsel was able to help Plaintiff and the Class obtain redress for their grievances in this case, and a judgment in this case could potentially affect other similar employers that might be employing similar screening practices.  Thus, this Court finds that the results obtained for the Class are significant and weigh in favor of finding that the requested fee is reasonable.

(5)    **Desirability of the Case within the Legal Community**

Class Counsel agreed to represent Plaintiff in this case on a contingency fee basis, which involved substantial risk of loss to Counsel in the event that Counsel was not successful in obtaining a recovery on behalf of Plaintiff and the Class. Because Counsel knowingly undertook a case with a significant financial burden despite the risk of non-payment, the Court finds that the case might be considered undesirable to prospective attorneys.

(6)    **Nature and Length of the Professional Relationship between Counsel and Client**

Counsel has represented Plaintiff since the preparation and filing of her EEOC charge in 2011, and this is the first matter for which Counsel has provided legal services to Plaintiff. This factor has little application in this case.

### d.    Conclusion

Based on the foregoing analysis, the Court awards Class Counsel $150,000.00 in attorneys' fees, which is one-third of the Gross Settlement Amount. The award is justified by the work that Class Counsel performed in negotiating the Settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims. Further, as required by Local Civil Rule 54.02, the Court finds that the award complies with the requirements set forth in *Barber*, 577 F.2d at 226. The award shall be paid from the Gross Settlement Amount.

### 2.    Costs

Class Counsel also seeks reimbursement of $19,329.76 for out-of-pocket expenses incurred in litigating and settling this action. [Docs. 28; 28-1 at 16.] The Court is

37

authorized to award costs that are reasonable in nature. Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award . . . untaxable costs that are authorized by law or by the parties' agreement."). Generally, courts permit recovery of costs advanced for litigation expenses, including document production, consulting with experts, and court and mediation costs. *McClaran*, 2015 WL 5037836, at *5.

The Court has reviewed the expenses incurred by Class Counsel in this case and finds that they are reasonable and that reimbursement is appropriate. Class Counsel's expenses were incidental and necessary to the representation of Plaintiff and the Class and are in line with costs charged to individual clients who pay out of pocket. [Doc. 27-2 at 11.] Specifically, the expenses include mediator's fees, court fees, postage, transportation, printing, copying, conference calls, electronic research, and consulting fees. [*Id*. at 71.] Accordingly, the Court approves Class Counsel's motion for costs in the amount of $19,329.76, which shall be paid from the Gross Settlement Amount.

## IV.    Service Award

Pursuant to the Settlement Agreement, the Named Plaintiff, Regina Robinson, has applied for a Service Award in the amount of $15,000 in recognition of the services she provided on behalf of the class. [Docs. 29; 29-1.] Plaintiff has effectively fulfilled her obligations as Class Representative and has voluntarily engaged in this litigation and the Settlement on behalf of hundreds of other individuals when the benefits solely available to her hardly justify the effort. As such, the Court finds the requested Service Award appropriate, as explained below.

38

## A.    Legal Standard

"At the conclusion of a successful class action case, it is common for courts exercising their discretion, to award special compensation to the class representative in recognition of the time and effort they have invested for the benefit of the class." *Temp. Servs.*, 2012 WL 13008138, at *6 (collecting cases). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest" and "[c]ourts around the country have allowed such awards to named plaintiffs or class representatives." *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-1339, 2013 WL 2285972, at *6 (S.D. W.Va. May 23, 2013); *see also Savani v. URS Prof'l Solutions LLC*, No. 1:06-cv-02805, 2014 WL 172503, at *10 (D.S.C. Jan. 15, 2014); *In re MI Windows & Doors Inc. Prod. Liab. Litig.*, No. 2:12-MN-00001-DCN, 2015 WL 4487734, at *5 (D.S.C. Jul. 23, 2015). "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-cv-2149, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (citation omitted).

## B.    Analysis

Upon review of the record, the Court finds that Plaintiff has made important and valuable contributions to the prosecution and fair resolution of this action on behalf of all

Class Members.  [Doc. 27-2 at 8.]  Plaintiff assisted Class Counsel's investigation and prosecution of the claims by providing factual information and other relevant information related to her claims and by providing documents in her possession relevant to Defendant's hiring processes.  [*Id*.]  Plaintiff also assisted Class Counsel with preparing the EEOC charge and Complaint, litigating this action, and negotiating the Settlement Agreement.  [*Id*.]  Class Members were apprised of Plaintiff's request for a Service Award in the Notice to Class Members, and no Class Member has objected to the Service Award.  [Doc. 27-2 at 46, 56.]

The Service Award is proper in light of Plaintiff's assistance to Class Counsel in the investigation and litigation of this case.  *Gray*, 2012 WL 12978113, at *7.  The Service Award in the amount of $15,000 is well within the range of reasonable incentive awards approved by courts.  *See McCurley v. Flowers Foods, Inc.*, No. 5:16-cv-00194-JMC, 2018 WL 6650138, at *8 (D.S.C. Sept. 10, 2018) (collecting cases).  Accordingly, the Court finds that the requested Service Award of $15,000 is reasonable in light of the contributions Plaintiff made to advance the prosecution and resolution of her claims and those of the Class; the time and effort that Plaintiff expended in furtherance of the investigation, litigation, and settlement of this case; and the risks she endured in order to vindicate her rights and the rights of the absent Class Members.  The Service Award shall be paid from the Gross Settlement Amount.

40

## ORDER OF APPROVAL AND JUDGMENT

For the foregoing reasons, the Court **GRANTS** Plaintiff's motions for final approval of class action Settlement [Doc. 27], approval of attorneys' fees and costs [Doc. 28], and approval of the Service Award to Plaintiff [Doc. 29], and **ORDERS** as follows:

(1)    The proposed class action Settlement Agreement is **APPROVED** as it is fair, adequate, and reasonable and in the best interests of the Class Members. The Settlement is expressly incorporated herein by reference and will have the full force and effect as an Order of this Court. The parties shall abide by all terms of the Settlement Agreement.

(2)    The Court hereby **CERTIFIES** the Settlement Class pursuant to the terms of the Settlement Agreement. The notice given to the Class was reasonably calculated under the circumstances to apprise Class Members of all material elements of the Settlement and their opportunity to exclude themselves from the Settlement or to object to, or comment on, the Settlement and to appear at the fairness hearing, and the notice satisfies due process. Accordingly, the Court determines that all Class Members are bound by this Judgment. All Class Members have released and forever discharged the Released Claims. All Class Members are barred and permanently enjoined from asserting or prosecuting the Released Claims.

(3)    Class Counsel's request for Attorneys' Fees in the amount of $150,000 and reimbursement for costs in the amount of $19,329.76 is **GRANTED** and **APPROVED**.

41

(4)      Plaintiff's request for a Service Award in the amount of $15,000 is **GRANTED** and **APPROVED**.

(5)      The Settlement Claims Administrator will disburse Settlement Checks to Class Members, attorneys' fees and costs to Class Counsel, and the Service Award to Plaintiff Regina Robinson within seven (7) days after Defendant submits the Gross Settlement Amount to the Settlement Claims Administrator.

(6)      Defendant shall conduct any future credit checks of its job applicants only in accordance with applicable law.

(7)      This case is **DISMISSED, with prejudice**, subject to the Court's continuing jurisdiction to enforce the terms of the Settlement Agreement. The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement. The Court expressly retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

**IT IS SO ORDERED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 21, 2019
Greenville, South Carolina

42